UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| USA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROBERTO MENDEZ-SANCHEZ,<br><br>　　　　Defendant. | CASE NO. CR06-425 MJP<br><br>ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on Defendant Roberto Mendez-Sanchez's Motion and Amended for Compassionate Release. (Dkt. Nos. 1067, 1074.) Having reviewed the Motion and Amended Motion, the Government's Oppositions (Dkt. Nos. 1077, 1078), the Reply (Dkt. No. 1080), and all supporting materials, the Court GRANTS the Motion. The Court also GRANTS Mendez-Sanchez's Motion to File an Overlength Brief. (Dkt. No. 1079.)

**BACKGROUND**

Following a jury trial, Mendez-Sanchez was convicted of seven separate drug offenses, including: (1) conspiracy to distribute 500 grams or more of a mixture or substance containing

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846; (2) conspiracy to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846; (3) conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846; (4) distribution of cocaine, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C), 18 U.S.C. § 2; (5) possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of §§ 841(a)(1), 841(b)(1)(A), 18 U.S.C. § 2; (6) possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C), 18 U.S.C. § 2; and (7) distribution of between 5 and 50 grams of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), 18 U.S.C. § 2. (Dkt. Nos. 731, 784.) As part of its verdict, the jury made findings regarding the drug quantities involved. (Dkt. Nos. 731; 1031.)

The quantities of drugs charged in the indictment and found by the jury normally carry a statutory minimum prison term of 10 years. 21 U.S.C. § 841(b)(1)(A). But in this case the Government filed a recidivist Enhanced Penalty Information based on Mendez-Sanchez's prior state conviction of conspiracy to deliver a controlled substance. (Dkt. No. 501.) This enhancement increased Mendez-Sanchez's applicable mandatory minimum to at least 20 years. 21 U.S.C. § 841(b)(1)(A).

Based on the total quantity of drugs involved in his offenses, Mendez-Sanchez's total offense level was 36, his criminal history category was II, and his sentencing range was 240 to 262 months. (Presentence Report (PSR) ¶ 94 (Dkt. No. 1075).) On February 7, 2008, the Court sentenced Mendez-Sanchez, imposing the mandatory minimum term of 240 months of imprisonment. (Dkt. Nos. 783, 784.) Mendez-Sanchez received a sentence more than twice as long as any sentence imposed on his 27 codefendants. (See Dkt. No. 781 at 4.) Mendez-Sanchez

ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE - 2

1  has now served over 15 of the 20 years of his sentence, which is at least one-and-a-half times the

2  length of the sentence imposed on any of his codefendants. (See Presentence Report at §§ 50-129

3  (Ex. 10 to Def. Mot.).) As the Government notes, "[a]ccouting for good-time credits, Mendez-

4  Sanchez has served around 17 of his 20-year sentence," and has a release date of March 7, 2024.

5  (Opp. at 3.) Mendez-Sanchez faces an immigration detainer that charges him with being

6  removable. (See Dkt. No. 1060-1 at 8.)

7        Mendez-Sanchez now asks the Court for compassionate release under 18 U.S.C. §

8  3582(c)(1). He asserts that the following are extraordinary and compelling reasons warranting a

9  reduction in his 20-year sentence by a little over 2 years: (1) the predicate offense that resulted in

10 a higher mandatory minimum sentence would no longer qualify as a predicate offense; (2) he has

11 served more than the 15-year mandatory minimum that would apply had he been sentenced

12 today; (3) the rapid spread of the Omicron variant of COVID-19 threatens his safety; and (4) his

13 desire to return to Mexico to care for his 73 year-old mother who is in need of assistance.

14                         **ANALYSIS**

15 **A.    Legal Standard**

16       "A federal court generally 'may not modify a term of imprisonment once it has been

17 imposed.'" Dillon v. United States, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). But

18 "[u]nder 18 U.S.C. § 3582(c)(1)(A), Congress provided an exception, sometimes known as

19 compassionate release, to reduce a sentence for extraordinary and compelling reasons." United

20 States v. Aruda, 993 F.3d 797, 799 (9th Cir. 2021) (quotation omitted). "[A]s part of the First

21 Step Act of 2018, Congress amended § 3582(c)(1)(A) to also allow a defendant to seek a

22 reduction directly from the court. . . ." Id. (citing Pub. L. No. 115-391, Title VI, sec. 603(b)(1), §

23 3582, 132 Stat. 5194, 5239 (2018)). By its plain language, the First Step Act permits the Court to

24

modify a sentence if: (1) the inmate has exhausted administrative review of a request for the Bureau of Prisons to move to reduce the sentence; (2) the inmate presents extraordinary and compelling reasons for the sentence reduction; and (3) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). But the Ninth Circuit has concluded that a defendant need not show the requested reduction is consistent with the Sentencing Commission's policy statement, given that it is outdated and therefore not "applicable." Aruda, 993 F.3d at 800-02. In reaching this conclusion, the Ninth Circuit adopted the reasoning of "the Fourth Circuit, [that] '[t]here is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" Aruda, 93 F.3d at 801 (quoting United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (quotation omitted)). The Ninth Circuit has therefore concluded that "the Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." Id. at 802.

The Parties dispute whether post-sentencing statutory changes in substantive sentencing laws can justify a sentence reduction under Section 3582(c)(1)(A). The Ninth Circuit has yet to weigh in on this issue, and the other circuit courts are not in agreement. The First, Fourth, and Tenth Circuits have held that a district court may consider the First Step Act's non-retroactive changes to sentencing regimes to be an "extraordinary and compelling" reason that could warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) provided the court considers the sentencing changes in the particular circumstances of the defendant. See United States v. Ruvalcaba, ___ F.4th___, No. 21-1064, 2022 WL 468925, at *9 (1st Cir. Feb. 15, 2022);

McCoy, 981 F.3d at 285; United States v. McGee, 992 F.3d 1035, 1047 (10th Cir. 2021). The Third, Sixth, Seventh, and Eighth Circuits have rejected this approach, noting that doing so would disregard the limitation Congress placed on retroactive application of sentence reductions contained in the First Step Act. See United States v. Andrews, 12 F.4th 255, 260-61 (3d Cir. 2021); United States v. Jarvis, 999 F.4d 442, 444-45 (6th Cir. 2021); United States v. Thacker, 4 F.4th 569, 576 (7th Cir. 2021); United States v. Crandall, ___ F.4th ___, 2022 WL 385920, at *3 (8th Cir. 2022). The Court finds the reasoning of the First, Fourth, and Tenth Circuit more persuasive on this issue. As the First Circuit explained, a district court's consideration of the First Step Act's nonretroactive sentencing changes when the assessing a § 3582(c)(1)(A) motion "is not sullied by a district court's determination, on a case-by-case basis, that a particular defendant has presented an extraordinary and compelling reason due to his idiosyncratic circumstances (including that his mandatory minimum sentence under section 841(b)(1)(A) would have been significantly shorter under the FSA). Ruvalcaba, 2022 WL 468925, at *10. This is consistent with Judge Bryan's conclusion that "Section 3582 (c)(1)(A) provides a safety valve against what otherwise would be a harsh, unjust, and unfair result stemming from a non-retroactivity clause." United States v. McPherson, 454 F. Supp. 3d 1049, 1053 (W.D. Wash. 2020). And although the Government urges the Court not to follow the First, Fourth, and Tenth Circuits, it concedes that "[i]f . . . the Court finds some other 'extraordinary and compelling' reason exists, it can consider post-sentencing changes in the law in its evaluation of the §3553(a) factors in determining whether compassionate release is warranted." (Opp. at 7 (citing United States v. Lizarraras-Chacon, 14 F.4th 961, 966-967 (9th Cir. 2021)).) The Court will therefore consider the post-sentencing changes created by the First Step Act in determining whether

ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE - 5

Mendez-Sanchez has demonstrated "extraordinary and compelling" reasons specific to his circumstances to reduce his sentence.

**B.      Exhaustion**

As an initial matter, the Court finds that Mendez-Sanchez has exhausted his administrative remedies. Indeed, the parties agree on this point. (See Mot. at 3-4 (Dkt. No. 1074); Opp. at 5 (Dkt. No. 1077).)

**C.      Reduction in Sentence**

Having considered the evidence and argument presented, the Court finds extraordinary and compelling reasons justify a reduction to Mendez-Sanchez's sentence. The Court bases its findings on several factors.

First, the Court considers the fact that Mendez-Sanchez received a mandatory minimum sentence that now exceeds the mandatory minimum that the Court would have imposed had it sentenced Mendez-Sanchez today. Were the Court to sentence Mendez-Sanchez again, it would impose only the mandatory minimum sentence, as it did initially. Mendez-Sanchez has therefore served more than the now-applicable mandatory minimum by nearly 2 years, accounting for "good-time credits."

Second, the Court considers that Mendez-Sanchez's sentence is more than twice the length of any sentence imposed upon his 27 other codefendants and he has been incarcerated for more than one-and-a-half times as long as any of his codefendants. This highlights the disproportionate nature of Mendez-Sanchez's sentence.

Third, the Court considers that the First Step Act has now made Mendez-Sanchez's predicate offense no longer sufficient to trigger the mandatory minimum if he were sentenced today. The mandatory minimum under § 841(b)(1)(A) now requires the prior offense to be a

1 | "serious drug felony" which applies "only if the defendant actually served a term of
2 | imprisonment of more than 12 months." <u>United States v. Asuncion</u>, 974 F.3d 929, 931 (9th Cir.
3 | 2020), <u>cert. denied</u>, 141 S. Ct. 2544, 209 L. Ed. 2d 564 (2021) (citation and quotation omitted).
4 | Here, Mendez-Sanchez was only sentenced to 7 months in prison for his prior drug felony. (See
5 | Dkt. No. 1074-7 at 4.) While the change in the law has no retroactive application, the Court
6 | considers that had Mendez-Sanchez been sentenced today, his prior drug felony would not
7 | qualify for the imposition of the mandatory minimum sentence.

8 |      Fourth, the Court has also considered the threat of the Omicron variant of COVID-19 and
9 | Mendez-Sanchez's desire to return to Mexico to assist his aging mother. These factors are not
10 | particularly extraordinary, though they have some compelling value. Although the Omicron
11 | variant's spread has slowed, the risk of adverse health impacts from COVID-19 remain present.
12 | And Mendez-Sanchez's desire to care for his aging mother is consistent with Note 1 to U.S.S.G.
13 | § 1B1.13, which includes consideration of "family circumstances." While the Court does not
14 | have a strong record before it of family circumstances justifying early release, the Court notes
15 | that Mendez-Sanchez would be more productive if he were caring for his aging mother rather
16 | than continuing to spend time in prison.

17 |      Together, these factors and considerations greatly undermine the rationale for continued
18 | incarceration and highlight a fundamental unfairness in continuing Mendez-Sanchez's current
19 | sentence. The Court finds that these factors presents compelling and extraordinary reasons that
20 | justify reducing Mendez-Sanchez's remaining sentence to time served.

21 |      The Court also considers Mendez-Sanchez not to be a danger to the community. <u>See</u>
22 | U.S.S.G. §1B1.13(2). The Court is aware that Mendez-Sanchez has been involved in at least
23 | three altercations while in custody, including assaulting another inmate in 2014 that fractured his
24 |

skull. (See Dkt. No. 1074-9.) Mendez-Sanchez urges the Court to consider the fact that his last infraction occurred in 2018, that prisons "can be a very dangerous place where one, at times, needs to protect himself," and that he has aged significantly since he committed his underlying offenses. The Court has carefully considered Mendez-Sanchez's record in custody. While the three documented in-custody fights reveal Mendez-Sanchez' capacity to pose a danger to others, the Court remains unpersuaded that this past conduct indicates how Mendez-Sanchez will conduct himself outside of custody. Notably, Mendez-Sanchez has had no disciplinary infractions since 2018, which suggests a substantial capacity to improve his own self-regulation, even in the confines of prison. Moreover, Mendez-Sanchez is nearly 50 years old and has matured significantly since the underlying conduct. The Court sees little risk that Mendez-Sanchez will be engaged in drug trafficking or violent conduct upon his release.

## CONCLUSION

Having considered the evidence and argument of the parties, the Court finds that extraordinary and compelling reasons justify the reduction of Mendez-Sanchez's remaining sentence to time served. The Court therefore GRANTS the Motion and AMENDS the Judgement as follows:

(1) The Court reduces Mendez-Sanchez's remaining sentence to time served and Mendez-Sanchez's shall be released from custody 14 days from the date of this Order to accommodate a quarantine period with the Federal Bureau of Prisons. If Mendez-Sanchez's tests COVID-19 positive at any time during this quarantine period, the Federal Bureau of Prisons shall notify the Government which will immediately notify the Court so that this Order can be modified as appropriate; and

(2) The Court withdraws and vacates the term of supervised release contained in the original judgment, particularly in light of the pending ICE detainer and Mendez-Sanchez's desire to return to Mexico.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 25, 2022.

Marsha J. Pechman
United States Senior District Judge